In the Matter of George T. FRAINE, Debtor.

George T. FRAINE, Plaintiff,

v.

Mildred Cone ELSBERRY, Defendant.

Bankruptcy No. 80-1899.
Adv. No. 81-136.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 30, 1982.

Edward M. Waller, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an action for damages based on an alleged breach of contract. The action was originally commenced by George T. Fraine in the Twelfth Judicial Circuit in and for Manatee County, Florida, Civ. Case No. CA–79–1467. On December 8, 1980, George T. Fraine filed a voluntary petition for Relief under Chapter 13, but not having been able to obtain confirmation, filed a notice of conversion of the case to a Chapter 7 liquidation case. In due course, Jary C. Nixon, the Trustee of the estate was substituted as party plaintiff and tried the case on behalf of the estate. The complaint, based on a claim of breach of contract, sought to recover a money judgment from Mildred Cone Elsberry (Elsberry), the Defendant named in the action.

The complaint sets forth a claim for recovery on four different theories. The claim in Count I is based on an alleged breach of contract and seeks to recover lost profits. The claim in Count II, although not very well articulated, appears to seek a recovery on the theory of an alleged injury to the reputation of the Plaintiff. The claim in Count III is based on an alleged breach of contract. The claim in Count IV is based on the theory of quantum meruit and seeks a recovery of the value of the services allegedly rendered by the Plaintiff to the Defendant.

The facts germane and relevant to the resolution of the issues raised by the four Counts of the complaint, as established by the record made at the final evidentiary hearing, can be summarized as follows:

George T. Fraine, (Debtor), was at the time pertinent to this controversy, a citrus broker, commonly known in the trade as a birddogger. A birddogger harvests, buys and sells citrus fruit grown by others. Elsberry was and still is a grower who owns a citrus grove located in Manatee County, Florida.

In February of 1978, the Debtor and Elsberry entered into an agreement whereby Elsberry agreed to sell and Fraine agreed to pick and buy all of her grapefruit and Seedling oranges during the remaining part of the growing season. In April of the same year the Debtor and Elsberry entered into a second similar agreement concerning the harvest and purchase of approximately 3,000 bushels Valencia oranges. The crew which originally had been harvesting the Valencias had another commitment and could not finish picking the oranges. Fearing spoilage, Elsberry agreed to sell the Valencia crop to Fraine provided he would finish the picking.

While picking the Valencias, the Debtor noticed the presence of representatives of Tropicana who were taking down license numbers of the vehicles used by the crew of the Debtor. It appears that in July of 1971 Tropicana had entered into a Participation Agreement with Elsberry, which provided for the sale of all Elsberry's Early, Mid-season (Hamlin, Pineapple and Seedling), and Valencia oranges to Tropicana. This Agreement was recorded in the Public Records of Manatee County. The Agreement provided that absent written cancellation by either party, the Participation Agreement continued from year to year. Apparently no question or objection was raised by Tropicana with respect to the Debtor harvesting the Valencias and, in fact, Tropicana agreed to allow the Debtor to do so.

On October 15, 1978, the Debtor and Elsberry entered into another agreement. This agreement involved the picking, hauling and purchasing by the Debtor of all of Elsberry's citrus in the 100 acre grove, known as the Cone Grove, grown during the 1978—1979 season. Upon execution of the agreement, the Debtor gave Elsberry a check in the amount of $1,000. Later this check was replaced with a check in the amount of $5,000 as an additional deposit. The Agreement also provided that the price for the Valencias and Mid-season oranges would be $.85 per pound solid, plus canners average rise, less harvesting, picking and hauling. Except for portions which are not important for purposes of this opinion, that

was the entire Agreement between the parties.

Just after the Debtor began to pick the Valencias and Mid-season oranges, he was notified by Elsberry that Tropicana, through their attorney, had written her a letter asking that she honor her contract with Tropicana and immediately stop the Debtor's crew from picking the fruit. Elsberry complied with the request of Tropicana and ordered the Debtor to stop picking the fruit and to remove his crew immediately. However, in order to comply with Tropicana's request for specific performance, Elsberry requested Fraine to continue to pick the fruit, but deliver the same to Tropicana. Shortly thereafter, it appeared that Fraine could not pick the fruit fast enough and the fruit was spoiling on the trailers. In order to save the fruit, Elsberry then contacted another crew to complete picking the remaining oranges. There is no dispute that, at that point, Fraine stopped all harvesting activity and removed his crew from the groves of Elsberry.

These are the basic facts against which this Court is called upon to resolve the issues raised by the respective contentions of the parties.

It is the contention of Fraine that he had a valid binding contract with Elsberry for the harvesting and sale of the 1978 citrus crops, and that he was entitled to pick and buy all the grapefruit and seedling oranges of Elsberry and 3,000 bushels of Valencia oranges. Elsberry prevented him from completing the contract and, as a result, he suffered loss of business opportunity and loss of profits. In any event, he contends he is entitled to recover the value of his services on a quantum meruit theory.

In opposition to the claims of the Debtor, Elsberry contends that the Debtor was well aware of Elsberry's outstanding contract with Tropicana (Participation Agreement); that the Debtor knew that he had to clear his contract with Tropicana; and that he had agreed to contact Tropicana and to proceed only if he received the green light to go ahead from Tropicana. Otherwise, he would tear up his contract with Elsberry.

There is no such contingency provision in the Debtor's written contract with Elsberry, but Elsberry sought to establish it by parol evidence. While the Debtor concedes there were some conversations about obtaining clearance from Tropicana, he maintains that such discussions related to the April 1978 agreement and not to this agreement.

The record reveals that the market price of Valencia oranges was $1.06 per pound solid in March and the price stipulated in the Debtor's contract was $.85 per pound solid. There is evidence in the record that the October contract included a provision for price adjustment based on canner's average rise, i.e. an increase based on the average price paid by canners for the fruit at any given time, which in this case would have brought the price to be paid for the fruit under the October contract about the same as the market price. Notwithstanding this, it is clear from the record that the canner's average price still would have brought the price at least a few cents lower than the then prevailing market price.

There is no question that Elsberry entered into the contracts in question well knowing that she already had an outstanding commitment to sell the fruit to Tropicana. While it is not clear whether the Tropicana contract required Tropicana to harvest the fruit, this Court is satisfied that this was not the case and Tropicana had no responsibility for picking the fruit. Thus, it is clear that Elsberry attempted to have the best of two worlds: having the fruit picked and then selling the fruit to the highest bidder, in this case to Tropicana. Under this set of facts one is justified in assuming that the Debtor entered into the contract with Elsberry only because of his expectation of being able to purchase the fruit, resell it and recoup his harvesting expenses and to earn a profit on the sale of the fruit harvested by him.

The contention of Elsberry that the Debtor was aware of the Participation Agreement and entered into the contract with the understanding that his contract was contingent on the Debtor's ability to obtain a

clearance from Tropicana cannot be accepted first, as a matter of law and second, as a matter of fact.

 The contract of the Debtor with Elsberry is totally silent on this point and does not contain any contingency at all. It would be a gross violation of the parol evidence rule to consider the testimony of Elsberry that there was an understanding about this contingency which would have materially impaired the right of the Debtor if it was not removed. There is no contingency in the contract and its terms cannot be altered and changed by parol evidence. Next, it is hardly conceivable that the Debtor would have entered into the performance of a service contract of some consequence had he known that he would not reap the benefit of the bargain he sought, unless he obtained a consent from Tropicana. The fact that the Participation Agreement was placed on the Public Records of Manatee County is of no great consequence for the following reasons:

First, this Court has serious doubt that such a "recordation" is sufficient to serve a notice to the world, especially of the existence and terms of any outstanding agreement to purchase citrus fruit from growers. Second, even assuming that the Debtor might have known about the Participation Agreement, the record is clear that such agreement did not compel Tropicana to buy any fruit, but merely gave Tropicana an option to purchase which option did not prevent Elsberry from contracting with others, which she had indeed done.

In sum, it is clear that Elsberry breached her contract with the Debtor and shall be held liable for all damages flowing directly from such breach. Whether the Trustee is able to establish the precise amount of all elements of consequential damages suffered by the Debtor remains to be seen. In any event, it is clear that the Debtor shall be entitled to recover at least the value of his services and also possibly the loss of possible profits that he could have realized had he been permitted to complete the contract.

A separate final judgment on the issue of liability will be entered in accordance with the foregoing.